UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carol A. Budro,
    Plaintiff

    v.                                                           Civil No. 07-cv-351-SM
                                                             Opinion No. 2008 DNH 081

BAE Systems Information
and Electronic Systems
Integration, Inc.,
    Defendant


**O R D E R**

Plaintiff, Carol Budro, alleges that defendant, BAE Systems, violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by denying her employment opportunities within the company because of her age, and by terminating her after she complained. Defendant moves for summary judgment on grounds that plaintiff waived any claims she might have had when she signed a release and accepted a supplemental severance package. Plaintiff objects. For the following reasons, defendant's motion for summary judgment is granted.

**Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In reviewing summary judgment, the record and all reasonable inferences therefrom must be scrutinized in the light most favorable to the non-moving party. <u>Am. Airlines v. Cardoza-Rodriguez</u>, 133 F.3d 111, 116 (1st Cir. 1998).  The non-moving party, however, cannot rest on unsworn allegations. <u>Id.</u>  The non-movant must establish a trialworthy issue of fact by presenting competent evidence that would enable a jury to find in its favor.  <u>Id.</u>

**Background**

Plaintiff was employed by defendant from 1972 until she was laid off on August 4, 2006.  She claims that her termination was actually in retaliation for requesting an alternative dispute resolution ("ADR") review of a claim of age discrimination. Defendant asserts that plaintiff was laid off, along with 150 other employees, as part of a group workforce reduction plan.

Prior to her termination, plaintiff worked with a team setting up a test lab.  Her primary role involved acquiring materials and equipment.  According to plaintiff, once the test

lab was complete, her managers told her that there were no employment opportunities available in the company that required her skill set.  Plaintiff claims that two supervisors respectively commented "when are you going to retire?" and "at this point you should retire."  In response, plaintiff contacted BAE Systems's Human Resources Department and requested alternative dispute resolution with regard to a claim of age discrimination.  Plaintiff's request for an ADR proceeding was still pending when she was laid off two months later.

On July 31, 2006, the Monday before plaintiff's termination, Barbara McGuire, a BAE Systems's Human Resource Manager, presented plaintiff with a letter of termination, a document titled "BAE Systems Special Severance Pay Plan for the 2005 Reorganization" (hereinafter "the Plan"), and a document titled "General Release of Claims" (hereinafter "the Release").  The Release offered plaintiff two options:

> I can elect to a) receive the basic Severance Benefit provided under the Plan and retain my right to pursue whatever claims, if any, I may have against the Company; OR b) receive the basic Severance Benefit plus the Supplemental Severance Benefit described in the Plan, which is greater in value than any severance benefit to which I am otherwise entitled, and sign this Release.

(Def.'s Mot. Summ. J. (document no. 12), Ex. B, at 1.)  The terms of the Release required plaintiff to waive all claims she might have against her employer, and it specifically referred to claims arising under the ADEA.  The Release did, however, allow plaintiff to challenge its validity.  Plaintiff had 45 days to review the Release.  She signed it on August 4, 2006, and returned it to a BAE Systems Human Resources Manager the following day.  Based upon her election and waiver, plaintiff received $1,937.60 in basic severance pay and $27,126.40 in supplemental severance pay.

On November 21, 2006, plaintiff filed an age-discrimination claim with the New Hampshire Commission for Human Rights ("NHCHR") and the federal Equal Employment Opportunity Commission ("EEOC").  The NHCHR denied plaintiff's claim, specifically relying upon the signed Release as the reason for its denial.  The EEOC, in turn, upheld the NHCHR's denial.  Upon receiving the denial notices, plaintiff promptly filed this suit.

## Discussion

Defendant argues that the General Release of Claims form signed by plaintiff bars this suit for age discrimination under

the ADEA.  The ADEA, as amended by the Older Workers Benefit Protection Act ("OWBPA"), allows an employee to waive all claims of age discrimination if a release is "knowing and voluntary." 29 U.S.C. § 626(f)(1).  Under the statute:

> An individual may not waive any right or claim . . . unless the waiver is knowing and voluntary.  [A] waiver may not be considered knowing and voluntary unless at a minimum—
>
> **(A)** the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> **(B)** the waiver specifically refers to rights or claims arising under this chapter;
>
> **(C)** the individual does not waive rights or claims that may arise after the date the waiver is executed;
>
> **(D)** the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> **(E)** the individual is advised in writing to consult with an attorney prior to executing the agreement;
>
> **(F)(i)** the individual is given a period of at least 21 days within which to consider the agreement; or
>
> **(ii)** if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

  **(G)** the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

  **(H)** if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-

    **(i)** any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

    **(ii)** the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

Id. § 626(f)(1).

  The employer maintains the burden to prove that a release meets each requirement.  Id. § 626(f)(3).  If one requirement is missing, the release is void as to all ADEA claims.  Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998). Accordingly, to be entitled to summary judgment, defendant must "demonstrate that there [is] no issue of material fact as to

whether the [release] complied with each of the section 626(f) requirements." Am. Airlines, 133 F.3d at 117.

Plaintiff argues that the Release does not bar her claim for retaliation. While she does not offer any specifics she does draw the court's attention to Faris v. Williams WPC-I, Inc., 332 F.3d 316 (5th Cir. 2003), in support of her argument.

In Faris, the plaintiff claimed that the defendant retaliated against her for enforcing her rights under the Family and Medical Leave Act ("FMLA"). The plaintiff argued that the release she signed upon termination was unenforceable because it violated federal regulations precluding employees from waiving substantive rights under the FMLA. The court, agreeing with the defendants, held that while the plaintiff could not effectively waive her substantive rights under FMLA, she could waive any claims she might have for retaliation based upon her exercise of those rights. Faris, 332 F.3d at 321. Because plaintiff knowingly executed a release waiving her retaliation claim, her suit was barred. Id. at 322. To support its reasoning, the court compared releases under the FMLA to releases under the ADEA. Because a release of claims brought under the ADEA is

valid and not in violation of public policy, a release of FMLA claims was also thought valid.  Id. at 321.  The decision in Faris is not helpful to plaintiff.

Plaintiff signed a Release in which she waived all claims she may have had against defendant, except for claims challenging the validity of the Release itself.  The only question remaining is whether defendant has carried its burden to show that the Release satisfied all of the section 626(f) requirements.

Subsection (A).  To meet the requirements of subsection (A), the agreement must be between the individual and the employer and be "written in a manner calculated to be understood."  29 U.S.C. § 626(f)(1)(A).  A release is "written in a manner calculated to be understood" if it is "drafted in plain language geared to the level of understanding of the . . . individuals eligible to participate."  29 C.F.R. § 1625.22(b)(3).  The release should avoid technical jargon and long, complex sentences.  Id. § 1625.22(b)(4).

The Release meets the subsection (A) requirements.  It is a written agreement, between plaintiff and defendant, and defines

the rights plaintiff waived and the rights plaintiff retained in clear, straightforward language.  It also avoids "technical jargon" and correctly informed plaintiff of her options.  The "Claims Released" section, for example, states:

> Subject only to the exceptions noted in the previous paragraph [the "Claims not Released" section], I agree to waive and fully release any and all claims of any nature whatsoever (known and unknown), promises, causes of action or similar rights of any type ("Claims") that I may now have or have had with respect to any of the Released Parties listed below.  These Claims released include, but are not limited to, claims either in law or equity that in any way relate to my employment with the Company or the termination of that employment . . . .

(Def.'s Mot. Summ. J., Ex. B, at 1.)  The section goes on to list potential claims arising under anti-discrimination laws including the ADEA, federal employment laws, such as the Americans with Disabilities Act, and other federal, state, and local laws. Other sections of the Release are similarly worded and convey in clear terms both the rights plaintiff waived and those she retained.

While plaintiff does not make a focused argument about whether the Release meets the "manner calculated" requirement, she draws the court's attention to Thomforde v. IBM, 406 F.3d 500

(8th Cir. 2005), and Syverson v. IBM, 472 F.3d 1072 (9th Cir. 2007). Thomforde and Syverson, however, fail to support her case. The issue in both Thomforde and Syverson was whether a release met the "manner calculated" standard. The releases in those cases included both a "release of claims" section and a "covenant not to sue" section. In Thomforde, IBM argued that the two sections were distinct and served difference purposes, because one section was intended to release the employer from all ADEA claims while the other section was intended to preserve the employee's right to challenge the release's validity. Id. at 503-04. According to the court, however, "one plausible reading of the document reveals that the employee releases IBM from all ADEA claims and agrees not to institute a claim of any kind against IBM, except that the employee may bring an action based solely under the ADEA." Id. at 503. Because employees were not expected to have a "clear understanding of the legal difference between a release and a covenant not to sue," the court held that the release failed the "manner calculated" standard. Id. at 503-04. Syverson, decided two years later, heavily relied on Thomforde and reached the same conclusion.

The Release in this case differs significantly from the releases in <u>Thomforde</u> and <u>Syverson</u> because this Release does not have separate "release" and "covenant" sections.  Additionally, this Release does not confuse an employee's substantive right under the ADEA to challenge the validity of the Release with other causes of action under the ADEA that the employee may waive.  Thus, this Release satisfies the subsection (A) requirements.

<u>Subsection (B)</u>.  To satisfy subsection (B), a release must specifically refer to claims available under the ADEA.  In the "Claims Released" section of the Release, plaintiff waived claims under "the Age Discrimination in Employment Act, as amended, including, but not limited to the Older Worker Benefit Protection Act."  (Def.'s Mot. Summ. J., Ex. B, at 1.)  Thus, the Release satisfies this requirement.

Plaintiff argues, however, that defendant incorrectly treated her pending ADR proceeding as a "claim" she released rather than a "benefit" she retained under the terms of the agreement.  Plaintiff is incorrect.  In a section titled "Claims not Released," the Release provides:

11

>       By this agreement, I am not releasing claims for
>       benefits I may have under the Company's other benefit
>       plans (such as the pension or medical plan), any rights
>       to benefits under applicable workers' compensation
>       statutes or government-provided unemployment benefits,
>       any claims arising under federal or state securities
>       laws that I may have as a shareholder of the Company,
>       or any rights to enforce this Release, or any claims
>       relating to the validity of this Release under the Age
>       Discrimination in Employment Act, as amended.

(Id.)  The claims plaintiff did not waive are claims for benefits under defendant's benefit plans.  The Plan documents plaintiff received with her termination letter notified her that the benefits she received by signing the Release were in addition to other "benefits" such as paid time off, COBRA, and 401(k) contributions.  The right to an ADR proceeding with respect to her retaliation claim was not included in the list of "benefits" that plaintiff retained.  Additionally, because an ADR proceeding is a method of resolving a claim, as opposed to a benefit, plaintiff waived the right to an ADR proceeding with respect to her pending claim when she released defendant from all of her ADEA claims.  Thus, plaintiff did not retain a right to continue her pursuit of an ADR proceeding after she signed the Release, since nothing remained to be resolved.

Subsection (C). To satisfy subsection (C), an employee may only release an employer from past and present claims. The "Claims Released" section of the Release only released defendant from claims "that [plaintiff] may now have or have had." (Id.) Because the Release only released past and present claims and not future claims, the Release meets the subsection (C) requirement.

Subsection (D). To satisfy subsection (D), an employee must receive consideration in exchange for releasing the employer from past and present ADEA claims. The consideration must be in addition to that which an employee is already entitled to receive. The Release offered plaintiff two mutually exclusive choices: (1) decline to sign the Release, receive the basic severance package, and retain the right to pursue any claims against defendant, or (2) sign the Release, receive the basic severance package, and a substantial supplemental severance package, and release defendant from all past and present claims. Plaintiff signed the Release and received $27,126.40 in supplemental severance pay that she was not otherwise entitled to receive. Thus, the subsection (D) requirement is satisfied.

Subsection (E).  To satisfy subsection (E), an employee must be advised, in writing, to consult with an attorney prior to signing a release.  The Release advised plaintiff not once, but twice, to consult with an attorney prior to signing.  The first sentence "advised [plaintiff] to take this Release of Claims home, read it, carefully consider and consult with an attorney prior to signing it."  (Id.)  Later in the Release, plaintiff acknowledged, by signing, that she had been "advised to consult with an attorney prior to singing this Release."  (Id. at 3.)  Therefore, the subsection (E) requirement is met.

Subsection (F).  To satisfy subsection (F), which applies because defendant requested the Release in this case in connection with a group termination plan, an employee must have been given 45 days to review and consider the Release before signing.  In the first paragraph, the Release notified plaintiff that it was to be signed and returned to Human Resources by the 45th calendar day from the termination date.  Additionally, the Release later notified plaintiff that she could "take up to 45 days from [her] employment termination date to decide whether to sign this Release."  (Id.)  Therefore, the Release satisfies the subsection (F) requirement.

Subsection (G).  To satisfy subsection (G), an employee must have been offered a period of seven days from the date of execution to revoke a release.  The Release twice notified plaintiff of her right to revoke.  By signing the Release, plaintiff acknowledged that: (1) she understood that she could "revoke this Release within seven (7) calendar days from the date of signing," and (2) she would receive supplemental severance pay provided that she did not "revoke this Release within the seven-day revocation period."  (Id.)  Thus, the subsection (G) requirement is satisfied.

Subsection (H).  To satisfy subsection (H), which applies because defendant requested the Release in connection with a group termination plan, defendant had to inform those laid off about: (1) the group of individuals covered by the plan along with applicable eligibility factors and time limits; and (2) the job titles and ages of all individuals selected for the plan along with the ages of all individuals with the same job title who were not selected for the plan.  Defendant satisfied both of those requirements.  On July 31, 2006, five days before plaintiff's termination date, plaintiff received a copy of the Plan, a letter informing plaintiff of her termination, and the

General Release of Claims form.  The Plan included the information required by this subsection.  It explained the eligibility factors and time limits for the Plan and listed the ages of each person selected for the plan along with the ages of others in the same job title not selected for the plan.  Because plaintiff received the Plan with the General Release of Claims form, defendant satisfied this requirement.

## Conclusion

Plaintiff was offered a release form for execution that met all of the requirements of 29 U.S.C. § 626(f).  Plaintiff's execution of that release was knowing and voluntary.  Plaintiff released defendant from all claims she might have had under the ADEA.  Therefore, defendant's summary judgment motion (document no. 12) is granted.  Because this order disposes of plaintiff's case, defendant's motion to strike (document No. 9) is moot.  The Clerk of Court shall enter judgment in accordance with this order and close this case.

**SO ORDERED.**

*/s/ Steven J. McAuliffe*
Steven J. McAuliffe
Chief Judge

April 16, 2008

cc: Carol A. Budro, pro se
 Linda S. Johnson, Esq.
 Charla B. Stevens, Esq.